FILED
CLERK

5:26 pm, Jul 24, 2024

U.S. DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
LONG ISLAND OFFICE

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
--------------------------------------------------------X

UNITED STATES OF AMERICA,

**MEMORANDUM ORDER**

                *-against-*                                2:22-CR-00395 (GRB)(JMW)

NIALL ALLI,

                                *Defendant.*
--------------------------------------------------------X

**A P P E A R A N C E S:**

       Charles Peter Kelly, Esq.
       Burton T. Ryan , Jr., Esq.
       **United States Attorney's Office**
       Eastern District of New York
       610 Federal Plaza
       Central Islip, NY 11722
       *Counsel for the Government*

       Niall Alli
       *Defendant Appearing Pro Se*

       Jeffrey G. Pittell, Esq.
       **Maher & Pittell LLP**
       42-40 Bell Blvd. Suite 302
       Bayside, NY 11361
       *Court-appointed stand-by counsel for Defendant*

      Defiance and disregard of conditions of pre-trial release have led to this latest application

by the Government to have Defendant's bond revoked.   This application comes six months after

1

Defendant pleaded guilty to underlying criminal charges.  Before the Court is the Government's Motion to Remand (*see* ECF Nos. 36, 39), seeking revocation of the bail release conditions and detention of Defendant Niall Alli ("Defendant"), who pled guilty on December 8, 2023 to Disaster Relief Fraud in violation of 18 U.S.C. §1040 and Wire Fraud in violation of 18 U.S.C. § 1343.  For the following reasons, the Government's Motion to Remand (ECF No. 36) **is GRANTED**, and the Court orders permanent detention pending sentencing by the Hon. Gary R. Brown.[1]  This Order, in addition to any other findings made at the hearing, sets forth the Court's findings of fact and conclusions of law, as required by 18 U.S.C. § 3143.

## I.      BACKGROUND

***The Arraignment and Initial Bond Hearing in 2022:***

On August 30, 2022, Defendant was indicted on charges of disaster relief fraud and wire fraud in connection with his actions in obtaining loans totaling approximately $1.7M from the Paycheck Protection Program ("PPP") (hereafter, the "PPP Fraud"). On September 1, 2022, the undersigned set bail for Defendant at Two Hundred and Fifty Thousand Dollars ($250,000.00), as is reflected in his bail bond. The bail bond had, as a mandatory condition, that "[D]efendant must not violate any federal, state or local law while on release." *See* ECF No. 36-1.[2] On December 8, 2023, Defendant pled guilty to charges of both disaster relief fraud (18 U.S.C. Section 1040) and wire fraud (18 U.S.C. Section 1343) in connection with the $1.7M in PPP loans he fraudulently obtained.

---

[1] A sentencing date has been scheduled for September 6, 2024. *See* ECF No. 49 at 1.

[2] Defendant originally pled not guilty to both counts of the indictment, and was released on a $250,000 personal recognizance bond, with the following conditions: (1) Report to Pretrial Services as directed, (2) Travel restricted to New York City and Long Island, (3) Surrender passport and do not apply for travel documents, and (4) Subject to random home and employment visits. *See* ECF No. 49 at 1.

***What Transpired Since the Original Bond Hearing:***

On May 3, 2024, following Defendant's entry of a guilty plea, the Government moved for: (i) an order, pursuant to Rule 46(f)(1), Fed. R. Crim. P., forfeiting the bail; and (ii) an order pursuant to Rule 46(f)(3) of the Federal Rules of Criminal Procedure, entering judgment by default on the bail bond of Defendant (hereafter, the "Motion to Remand"). *See generally*, ECF No. 36.[3] The Government contends that because Defendant pled guilty to charges of both disaster relief fraud (18 U.S.C. §   1040) and wire fraud (18 U.S.C.  §   1343), the controlling statute for Defendant's bail is 18 U.S.C. § 3143(a)(1), which provides, in relevant part, that, for bail pending sentence, a defendant should be detained unless this Court finds by clear and convincing evidence, among other things, that the defendant does not pose a danger to the safety of any other person or the community. *See* ECF No. 36 at ¶ 2-3.

The Government asserts that since Defendant was released on bail on September 1, 2022, he has violated federal laws, including wire fraud and money laundering. *Id*. at ¶ 3. In Court for arraignment on September 1, 2022, the Federal Defenders of New York ("Federal Defenders") were assigned to represent Defendant, and, yet the Government claims Defendant "still had significant assets including possession of items bought with the $1.7M proceeds of the PPP Fraud, including two Patek Philippe watches, which together cost $138,568, one of which, the men's watch, cost about $80,000." *Id*. at ¶ 4. The Government further asserts that while on bail on November 15, 2022, and while being represented by Federal Defenders, Defendant sold the more expensive Patek Philippe watch for $180,000, which, the Government contends, was a "sale of criminally derived property of a value greater than $10,000 (Patek Philippe watch was purchased

---

[3] The Government's Motion to Remand at ECF No. 36 was referred to the undersigned by Judge Brown on May 8, 2024. *See* Electronic Order dated May 8, 2024.

with PPP funds obtained by fraud) and, as such, constituted the crime of money laundering under 18 U.S.C. Section 1957." *Id*.

The Government additionally asserts that, while on bail, Defendant has also committed frauds by wire victimizing American Express ("Amex"). *Id*. at ¶ 5. Specifically, the Government claims Defendant incorporated a company known as Bitdough, Inc. ("Bitdough") on or about August 28, 2023, and, in the fall of 2023, Defendant applied electronically for an Amex card for Bitdough. *Id*. ¶ 5(a). In that application to Amex, the Government claims Defendant represented that Bitdough had 40 employees and $20 million dollars in annual revenue, and that Defendant submitted a series of false bank statements and financial records in support of the application including false financial statements for Bitdough, Inc., including excerpts of altered bank statements for Novo and Mercury, which were altered by adding millions of dollars to balances. *Id*. Specifically:

> [T]the ending balance reported on the statements submitted by [D]efendant for Novo in June 2023, July 2023 and August 2023 was $6,406,155.99 (June 2023), $7,002,532.30 (July 2023) and $7,309,723.86 (August 2023). However, the actual statements show that the balances were $6,155.99 (June 2023), $2,532.30 (July 2023) and $9,723.86 (August 2023) as the ending balances. As for Mercury, similarly, the altered statements submitted by Defendant for Mercury show $5,255,990.30 for August 2023, $5,255,684.81 for September 2023 and $5,255,593.41 for October 2023. In fact, the Mercury account was not opened until October 2023 and then it had only the initial deposit of $500 through January 15, 2024 which is the amount reflected on the actual statement balance shows $500.00 as of January 18, 2024.

*Id*. The Government contends that "[b]ased on Bitdough's and Novo's unaltered bank statements, these representations are false." *Id*. The Government maintains that Defendant's Bitdough application was accepted based on these false financial statements and altered bank statements and, consequently, Amex issued Defendant and Bitdough a company credit card. *Id*.

The Government further claims that after viewing only personal charges on Bitdough's company credit card which totaled over $25,000 for a month, Amex put a hold on the card and

4

asked Defendant for additional bank statements for Bitdough, and, in response, Defendant emailed more false bank statements of a financial institution known as Mercury to Amex in support of the application to remove the hold on the Bitdough credit card, which showed a bank balance of $5,402,475.02 as an ending balance for November 2023 and $5,402,624.67 for December 2023 for Bitdough, while Bitdough's actual bank balance at Mercury was $500.00. *Id*. ¶ 5(b)-(c). Amex subsequently determined that these bank statements were altered, which the financial institution, Mercury, confirmed. *Id*.

On May 10, 2024, the Government filed a separate motion requesting that the Court reexamine the Defendant's eligibility for representation by the Federal Defenders. *See* ECF No. 37. On May 13, 2024, defense counsel James Darrow filed a motion requesting the Federal Defenders be relieved as counsel. *See* ECF No. 38. On May 14, 2024, a Bail Revocation Hearing was held before the undersigned. *See* ECF No. 40. Federal Defender Tracey Gaffey advised the Court that the Federal Defenders would no longer be able to represent Defendant due to Defendant's intent to withdraw his guilty plea. *Id*. The undersigned granted Defense Counsel's Motion to be relieved and offered CJA counsel for the Defendant for the remainder of the hearing; however, Defendant declined CJA counsel and stated he would be retaining counsel. *Id*. The revocation hearing was adjourned to July 8, 2024, and all release conditions remained in effect until that date. *See id*.; ECF No. 44.

On May 14, 2024, the Government submitted a supplemental letter to its Motion to Remand (hereafter, the "Government's Supplemental Letter"), "based on [D]efendant's violation of a release condition, namely commission of a federal, state or local felony while on release" pursuant to 18 U.S.C. § 3148, which provides, in relevant part, that if this Court finds that there is probable cause to believe that a defendant has committed a crime while on release and finds either that there

is no condition or combination of conditions of release that will assure that defendant will not flee or pose a danger to the safety of any other person or the community or that defendant is unlikely to abide by any condition or combination of conditions of release, the Court "shall enter an order of revocation and detention." *See* 18 U.S.C. § 3148(b); ECF No. 39. The Government's Supplemental Letter contends that the Motion to Remand provides probable cause to believe that Defendant has committed a federal felony while on release, such that an order of revocation and detention is appropriate. *Id.* at 1-2.

On May 20, 2024, Pretrial Services submitted a Memorandum to the Court Requesting for Modification of Defendant's Release Conditions advising the Court of: (i) additional inconsistencies in the Defendant's submitted financial documents, and (ii) suspicions that Defendant tampered with the documents to change the balances. *See* ECF No. 41. Pretrial Services recommended that Defendant's release conditions be modified to include a curfew with location monitoring, and a condition that he be prohibited from opening any new lines of credit or bank accounts without Court approval. *Id.* On July 8, 2024, the undersigned held a Bail Revocation Hearing for Defendant to address the Government's Motion to Remand. *See* ECF No. 47.[4] The undersigned reserved decision on the Motion and modified the conditions of release by amending the Order Setting Conditions of Release and Appearance Bond previously entered on September 1, 2022 to include a Rider reflecting five (5) additional conditions of release (the "July 8, 2024 Rider"). *Id*; *see also* ECF No. 48. The July 8, 2024 Rider provides:

> (1) Defendant shall not open any new lines of credit or bank accounts or charge accounts without Court approval.

> (2) Defendant shall not mortgage, encumber, or assume any loans without Court approval.

---

[4] CJA Counsel Jeffrey Pittell was assigned as stand-in counsel for the Hearing. *Id*.

(3) Pretrial Services to conduct credit checks to confirm all accounts, individual, as well as Corporations, including but not limited to AlliCorp and Bitdough DE.

(4) Defendant shall disclose all financial accounts to Pretrial Services and provide electronic access to Pretrial Services for the ability to access all financial accounts.

(5) Defendant to provide Pretrial Services with a statement of net worth, i.e. assets and liabilities.

ECF No. 48 at 4. The undersigned subsequently scheduled a Continued Bond Revocation Hearing for July 24, 2024. *See* Electronic Orders dated July 11, 2024 and July 12, 2024.

On July 11, 2024, Pretrial Services filed yet another Memorandum Requesting for Modification of Bail Conditions set by the undersigned as to Defendant. *See* ECF No. 49. Pretrial Services informed the Court that they were contacted by the U.S. Small Business Administration ("SBA") Supervisory Executive Protection Officer Michael A. Rodriguez on July 10, 2024, who provided Pretrial Services with a copy of emails the Defendant sent to SBA Administrator Isabella Casillas Guzman. *Id*. at 2. The emails reflected messages that appear to have been sent by the Defendant from July 2023 to June 2024. *Id*. Officer Rodriguez conveyed to Pretrial Services that the substance of the emails was "harassing and troublesome enough to warrant an investigation by his office," and that he was "instructed to intercept the [D]efendant if he attempts to approach Administrator Guzman in a public setting." *Id.* Officer Rodriguez additionally informed Pretrial Services that Defendant had flowers delivered to the SBA Headquarters in December 2023, addressed to Administrator Guzman. *Id*.

After reviewing the emails, Pretrial Services determined Defendant "has been monitoring Administrator Guzman's travel through social media." *Id*. Pretrial Services further expressed concern for the safety of Administrator Guzman, "due to the number of emails, the content of the emails, and the impulsivity in the [D]efendant's behavior." *Id*. Pretrial Services recommended to the Court that the Defendant's bond be modified to include: (1) Home Detention enforced by

Location Monitoring, and (2) Defendant shall refrain from contacting the Small Business Administration or any of its employees unless defense counsel is present and aware of the communication. *Id*. Pretrial Services asserted that "[t]hese added conditions would allow [them] to monitor the [D]efendant's location and would prohibit him from harassing employees of the SBA." *Id*.

On July 22, 2024, standby counsel for Defendant submitted a supplement and response to Pretrial Services' July 11, 2024 Memorandum. *See* ECF No. 50. Defense Counsel states that in addition to the email communications referenced in Pretrial Services' Memorandum, there are "additional communications Defendant had with the SBA." *Id*. Specifically, Defense Counsel states:

> The email chain from [Defendant] to SBA Administrator Guzman requests Guzman review [Defendant's] prosecution for PPP fraud. After not receiving a response, on September 20, 2023, [Defendant] sent a follow up email. Two days later, on September 22, 2023, in response to the follow up email, Quinn Carrigan – the Confidential Assistant to Administrator Guzman – forwarded [Defendant's] emails to "John, Michelle and Robert" and [copied Defendant]. The email from [Mr.] Carrigan, states: *Administrator Guzman would like you to please reach out and help Niall Alli with their request*.

> Thereafter, Robert Piechota, the Deputy Director of the SBA Delaware District Office[,] informed [Defendant] that he referred the matter to the SBA's Regional Counsel "*for his action*." Thereafter, on or about April 1, 2024, Mr. Piechota called [Defendant] and left a voicemail message suggesting [Defendant] contact his local Congressional Representative, his New York State Senator or the local SBA Office. Subsequently, by email dated April 19, 2024, [Defendant] informed Mr. Piechota he reached out the Senator Schumer's office. In response, Mr. Piechota wrote: *Good job!* In his last email to [Defendant], dated April 29, 2024, Mr. Piechota wrote: *I cannot comment on the speed and or ultimate outcome. The Senator's staff has a direct line to the highest personnel in our loan servicing department. I encourage you to remain vigilant and diligent.*

*See* ECF No. 50 at 1-2 (cleaned up). Defense Counsel "acknowledge[s] the number of emails [sent] by [Defendant] to Ms. Guzman might be inferred, as noted in the [July 11] Memorandum, as being impulsive[,]" however, Defense Counsel maintains that Defendant was rather being "vigilant and diligent . . . as encouraged in Mr. Piechota's email." *Id*. at 2. Defense Counsel additionally

disagrees with the July 11th Memorandum's characterization that Defendant has been "monitoring Administrator Guzman's travel through social media[,]" and argues that Administrator Guzman's social media accounts "are replete with reports about her travels across the country" and contain "numerous postings and photographs of her meeting with small business owners throughout the U.S.[,]" and, therefore, Defendant's "references to Guzman's travels were intended to commend her dedication to small business owners evinced by her traveling across the country to meet with them." *Id.*

Defense Counsel further contends that Defendant's emails do not give "cause for concern" about Administrator Guzman's safety and there is "no need to place [Defendant] on home detention with electronic monitoring" as: (i) "the dialogue between [Defendant] and the SBA was not one-sided[;]" (ii) Defendant's reference to Administrator Guzman's travels were not his "monitoring" of them, rather, he was "providing positive feedback on what Administrator Guzman publicly posts across her social media platforms[;]" and (iii) the July 11 Memorandum does not indicate Defendant actually traveled to meet, or attempted to meet, with Administrator Guzman. *Id.* at 2-3. Notably, Defense Counsel does not object to the Court issuing an Order directing Defendant from contacting the SBA or any of its employees, and has advised Defendant personally to do the same. *Id.*

***Defendant's Representation:***

On September 1, 2022, Defendant appeared in custody represented by Assistant Federal Defender C. Millioen for purposes of the arraignment. *See* ECF No. 5. The Federal Defenders continued to represent Defendant for status conferences and plea negotiations. *See* ECF Nos. 5, 9, 12, 13, 15, 18, 24, 27, 30. On May 10, 2024, the Government filed a Letter questioning Defendants' entitlement to the services of Federal Defenders based on income statements Defendant submitted

to Pretrial Services. *See* ECF No. 37. Thereafter, on May 13, 2024, Federal Defenders filed a Motion to Withdraw as Attorney for Defendant due to a conflict that arose in connection with representation of Defendant. *See* ECF No. 38.

The undersigned granted the Federal Defenders' Motion to Withdraw and arranged to have CJA Counsel – Gary Kaufman – attend Defendant's Bond Revocation Hearing on May 14, 2024 as stand-by counsel. *See* ECF No. 40. However, Defendant refused CJA counsel, and the Court subsequently adjourned the hearing thirty days to afford Defendant the time and opportunity to retain counsel should he choose to do so. *See id*. Two days prior to Defendant's scheduled appearance before the Court, Defendant emailed the undersigned's Chambers requesting an adjournment of the hearing for an additional two weeks. *See* ECF No. 42. The undersigned denied Defendant's request, and appointed CJA Counsel – Jeffrey G. Pittell – as Counsel for Defendant for purposes of the June 20, 2024 Bail Revocation Hearing. *See* ECF No. 43. On June 20, 2024, Magistrate Judge Lee G. Dunst presided over Defendant's Bond Revocation Hearing and adjourned the hearing to July 8, 2024 before the undersigned. *See* ECF No. 44. On July 8, 2024, at the request of the Court, Mr. Pittell again appeared as stand-by counsel on behalf of Defendant given Defendant's apparent inability to retain counsel. *See* ECF No. 47.

## II.    DISCUSSION

### A.    Defendant's Violation of a Release Condition under 18 U.S.C. § 3148

Section 3148 of The Bail Reform Act provides that a person who has been released and violated a condition of release is subject to a revocation of release and order of detention.  18 U.S.C. § 3148. Specifically, Section 3148(b) provides: "[A] person charged with violating the condition of release that such person not commit a Federal, State, or local crime during the period of release, shall be brought before the judicial officer who ordered the release and whose order is

alleged to have been violated."   Pursuant to this Section, Court shall enter an order of revocation and detention if, after a hearing, it finds: (i) "probable cause to believe that the person has committed a Federal, State, or local crime while on release;" or "clear and convincing evidence that the person has violated any other condition of release;" and (ii) "there is no condition or combination of conditions of release that will assure that the person will not flee or pose a danger to the safety of any other person or the community;"[5] or "the person is unlikely to abide by any condition or combination of conditions of release." *See* § 3148(b)(1)-(2).

"If there is probable cause to believe that, while on release, the person committed a Federal, State, or local felony, a rebuttable presumption arises that no condition or combination of conditions will assure that the person will not pose a danger to the safety of any other person or the community." *Id*; *see also United States v. Gotti*, 794 F.2d 773, 777 (2d Cir. 1986) ("Where there is probable cause to believe the released defendant has committed a crime, he may thereafter be detained upon a finding, by only a preponderance of the evidence, that no conditions of release will guard against flight or dangerousness or that the person is unlikely to abide by any release condition."). "[P]robable cause under section 3148(b)(1)(A) requires only that the facts available to the judicial officer warrant a man of reasonable caution in the belief that the defendant has committed a crime while on bail." *Id*. (internal citations omitted); *see also United States v. Galanis*, 656 F. App'x 560, 562 (2d Cir. 2016) ("Probable cause does not require refutation of every possible

---

[5] Pursuant to 18 U.S.C. § 3148(b)(2)(A), the Court is instructed to take into account the following factors determining whether there are any release conditions that will assure both the appearance of the person required and the safety of the community: (i) the nature of the charge, including whether it was violent; (ii) the weight of the evidence against the person, (iii) the person's traits, like character, mental condition, family ties, employment, financial resources, past conduct, criminal history, and record concerning appearance at court proceedings, and whether the person was on probation, parole, or on other release pending sentencing; and (iv) the seriousness or nature of the danger posed to the community by the person's release. *See* 18 U.S.C. § 3142(g).

innocent explanation for the conduct at issue.") Indeed, this standard "does not demand certainty but only a 'fair probability' that ... evidence of a crime will be found." *Id.* (quoting *Illinois v. Gates*, 462 U.S. 213, 238 (1983)).

"[P]robable cause is a reasonable ground for belief of guilt" based on the totality of the circumstances. *Maryland v. Pringle*, 540 U.S. 366, 371 (2003) (citations and internal quotations omitted). This "practical, nontechnical conception" turns on the assessment of probabilities in particular factual contexts—not readily, or even usefully, reduced to a neat set of legal rules." *Illinois v. Gates,* 462 U.S. 213, 231 (1983); *Pringle,* 540 U.S. at 371 (citations and internal quotations omitted). "Finely tuned standards such as proof beyond a reasonable doubt or by a preponderance of the evidence, useful in formal trials, have no place in the [probable-cause] decision." *Gates,* 462 U.S. at 235; *see also United States v. Vilar*, No. S305CR621KMK, 2007 WL 1075041, at *19 (S.D.N.Y. Apr. 4, 2007) (internal citations omitted) (cleaned up) ("In assessing probable cause, courts are to look at the totality of the circumstances, and should apply a flexible, common-sense approach. The evidence must be seen and weighed not in terms of library analysis by scholars, but as understood by those versed in the field of law enforcement."); *United States v. Hickey,* 16 F.Supp.2d 223, 238 (E.D.N.Y.1998) (quotations omitted) (finding there is probable cause when "there is a fair probability that evidence of a crime will be found").

Here, the Court finds probable cause exists to believe that Defendant committed two federal felonies – Wire Fraud in violation of 18 U.S.C. § 1343 and Money Laundering in violation of 18 U.S.C. § 1957 – while on release, triggering a rebuttable presumption that that no set of conditions protects the public from the economic threat Defendant poses.[6] *First*, 18 U.S.C. § 1343 defines "wire fraud" as "having devised or intending to devise any scheme or artifice to defraud,

---

[6] The Government does not assert that Defendant is a flight risk, but rather a danger to the community. *See* ECF No. 36.

or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises, transmits or causes to be transmitted by means of wire, radio, or television communication in interstate or foreign commerce, any writings, signs, signals, pictures, or sounds for the purpose of executing such scheme or artifice..." 18 U.S.C.A. § 1343.

As previously mentioned, the Government alleges that Defendant committed wire fraud against Amex while on bail by sending Amex falsified bank statements to apply for a credit card. *See* ECF No. 36 at 3-4. The Government specifically claims – and has provided evidence to show – Defendant created a company known as Bitdough Inc on August 28, 2023 and applied for a business card at Amex for the company. *Id*. at 3. In the credit application, Defendant represented that Bitdough had 40 employees and $20 million in annual revenue, and submitted false bank statements, inflating the account balances by millions of dollars. *Id*. Relying on these false bank statements, Amex issued Defendant and Bitdough a company credit card, to which Defendant spent over $25,000 on the card in one month before Amex put a hold on the card and requested additional bank statements. *Id*. at 4. Defendant subsequently emailed Amex subsequent false bank statements, inflating the account balance of one account by over $5M. *Id*. Pretrial Services further confirmed that they had reason to believe Defendant may have committed wire fraud due to additional inconsistencies in the Defendant's financial documents submitted to them in comparison to those submitted to the Government, and suspicions that Defendant tampered with the documents to change the balances. *See* ECF No. 41.

*Second*, 18 U.S.C. § 1957 defines "money laundering" as "knowingly engag[ing] or attempt[ing] to engage in a monetary transaction in criminally derived property of a value greater than $10,000…" 18 U.S.C. 1957(a). The Government alleges that while on bail on November 15, 2022, and while being represented by Federal Defenders, Defendant sold one of two Patek Philippe

watches he purchased with PPP money for $180,000. ECF No. 36 at 2. Novo records explicitly show the wire deposit for the sale of the watch. *Id.* And, because the sale of the watch was the sale of criminally derived property of value greater than $10,000, the Court finds probable cause to believe Defendant additionally committed money laundering in violation of 18 U.S.C. § 1957 while on release.

Considering the factors articulated in 18 U.S.C. § 3142(g), the Court further finds that Defendant cannot otherwise overcome the rebuttable presumption that no condition or combination of conditions will assure that he will not pose a danger to the safety of any other person or the community, especially in light of Pretrial Services' reports of Defendant's recent "harassing and troublesome" communications to the SBA and its members  – the victims of his fraudulent scheme – made while on release.[7] *See* ECF No. 49; *Gotti*, 794 F.2d at 777; *see also U.S. v. Nicolo*, 706 F.Supp.2d 330, 334-36 (W.D.N.Y. 2010) (revoking release and noting the defendant had made two threatening calls to a Government witness); *United States v. LaFontaine*, 210 F.3d 125, 135 (2d Cir. 2000) (affirming defendant's detention where she had attempted to contact and intimidate third parties related to her case); *United States v. Adelekan*, 2022 WL 17968647 at *3 (S.D.N.Y. Dec. 27, 2022) ("[T]he fact that one fraudulent scheme has been dismantled does not mean that a significant player in that scheme, like [defendant], could not repurpose his skills and experience. Indeed, [defendant's] alleged criminal activity while on pretrial release suggests exactly this and indicates that he continues to pose a danger to the community."); *U.S. v. Zhang*,

---

[7] Notwithstanding Defense Counsel's latest characterization of Defendant's communications with the SBA as "vigilant," "diligent," and "complimentary," Defendant concedes to repeatedly contacting members of the SBA regarding Defendant's "prosecution for PPP fraud" and to viewing and commenting on Ms. Guzman's social media account. *See* ECF No. 50 at 2. Pretrial Services specifically noted in its July 11 Memorandum that "Officer Rodriguez conveyed the substance of the emails were harassing and troublesome enough to warrant an investigation by his office" and further expressed "concern for the safety of Administrator Guzman due to the number of emails, the content of the emails, and the impulsivity in [D]efendant's behavior." ECF No. 49 at 2.

55 F.4th 141, 150 (2d Cir. 2022) (finding while an underlying white collar offense does not "bespeak[] danger to others" as drastically as a violent offense would, defendant's threats to a party related to the case factored against his character). Equally as fatal to the Defendant's desire to remain on bail is the unwillingness of any of his immediate family to act as a surety for him, both at the initial arraignment and now in connection with the Government's motion to revoke and remand. *See United States v. Wang*, 670 F.Supp.3d 57, 70 (S.D.N.Y. 2023) (finding the absence of any co-signer with sufficient moral suasion to ensure the defendant's compliance with conditions weighed against release).

Ultimately, the Court is unconvinced the additional conditions imposed on July 8, 2024 or any further combination of conditions would sufficiently mitigate or protect the community from the potential danger given the risk that Defendant could continue to wreak economic harm while on release. *See e.g.*, *United States v. Dupree*, 833 F. Supp. 2d 241, 253 (E.D.N.Y. 2011); *United States v. Madoff*, 586 F. Supp. 2d 240, 252 (S.D.N.Y. 2009) (internal citations omitted) ("The court may also consider 'economic harm' as evidence of dangerousness."). The Court's finding of probable cause to believe that Defendant committed white collar crimes similar to those he pleaded guilty to on December 8, 2024 evinces not only the Defendant's further propensity for sustained fraud, but his lack of remorse for the previous crimes. *See Nicolo*, 706 F.Supp.2d at 336 (lamenting the defendant's lack of remorse for his crimes at sentencing).

Here, accessibility to the internet is the tool that poses danger. Indeed, Courts have noted the pervasive and lucrative nature of the internet heightens the economic danger a criminal defendant may pose to the community. *See Wang*, 670 F.Supp.3d at 70 (detaining defendant where the Court found she could wage further financial schemes with her potential access to millions of dollars' worth of cryptocurrency and undisclosed accounts over the Internet); *see also United*

*States v. Valerio*, 9 F.Supp.3d 283, 292 (E.D.N.Y. 2014) (finding that a defendant could proliferate his criminal activity with "any access to any internet capable devices and/or unmonitored telephone calls (including mobile phones)," presenting "an extreme danger to the community"); *United States v. Voelker*, 489 F.3d 139, 145 (3d Cir. 2007) ("The ubiquitous presence of the internet and the all-encompassing nature of the information it contains are too obvious to require extensive citation or discussion."). This, in turn, complicates the feasibility of enforcing release conditions. *Valerio*, 9 F.Supp.3d at 295-96 ("[T]here is no way to ensure the full monitoring of defendant's activities. Computers, mobile phones, tablets, etc.—the type of instrumentalities…used to commit the crimes—are ubiquitous and easy to procure or hide, and increasingly even the lowest-level devices have internet functionality. Unlike in a jail, which provides greater layers of security…, the Court can conceive of several avenues through which defendant may procure or retain such devices on the premises, which heightens the risk of danger to the community."); *United States v. Schenberger*, 498 F.Supp.2d 738, 745 (D.N.J. 2007) ("Access to the internet is possible through desktop and laptop computers, phones, blackberries, etc. Given defendant's computer expertise and police background, this Court is not persuaded that meaningful assurances can be given that defendant's access to the internet can be stopped. [I]t is difficult to conceive of measures that could confidently assure that defendant would not communicate with others and encourage . . .illicit activities."). Computers and phones were Defendant's tools of choice in committing the underlying crimes to which he has now pleaded guilty, and also in carrying out the latest schemes alleged by the Government in its Motion and Pretrial Services in its latest submission.

Accordingly, the Court finds Defendant violated a mandatory condition of his bail bond to not "violate any federal, state or local law while on release," such that revocation of his release

and an order of detention is warranted under § 3148. *See* ECF No. 36-1; 18 U.S.C. § 3148. And, because Defendant violated a mandatory condition of his bail bond, the Court additionally finds Defendant forfeited his $250,000.00 bail under Federal Rule of Criminal Procedure 46(f)(1). *See* Fed. R. Crim. P. 46(f)(1) (emphasis added) ("The court *must* declare the bail forfeited if a condition of the bond is breached."); *see also United States v. Martinez,* 151 F.3d 68, 73 (2d Cir. 1998) (noting Courts interpret bail bonds "within the general framework of…contract law."); *United States v. Santiago*, 826 F.2d 499, 502 (7th Cir. 1987) ("[A] bail bond is a civil contractual agreement between the government and the…criminal defendant"). *United States v. Brooks*, 872 F.3d 78, 93 (2d Cir. 2017) ("The forfeiture of a bail bond functions as damages for breach of the civil contract, not as a punishment for the commission of a criminal offense.").

### B.    Defendant's Eligibility for Release Pending Sentencing under 18 U.S.C. § 3143

The Bail Reform Act governs whether a recently convicted defendant is eligible for release pending sentencing. *See* 18 U.S.C. §§ 3143(a)(2), 3145(c). Section 3143 of title 18 specifically states that "the judicial officer shall order that a person who has been found guilty of an offense and who is awaiting imposition or execution of sentence ... be detained." 18 U.S.C. § 3143. That is the context here: Defendant has plead guilty and is awaiting sentence scheduled for September. "Detention, therefore, is the general rule." *United States v. Quirion*, 808 F. Supp. 2d 343, 345 (D. Me. 2011). "An exception is available if 'the judicial officer finds by clear and convincing evidence that the person is not likely to flee or pose a danger to the safety of any other person or the community if released under section 3142(b) or (c).'" *Id.*[8] Defendant now bears the burden

---

[8] For a Defendant found guilty of certain offenses, including Wire Fraud and Disaster Relief Fraud, Section 3143(a)(2) specifically provides that the Court "shall order" that the defendant "be detained unless": (A)(i) the judicial officer finds there is a substantial likelihood that a motion for acquittal or new trial will be granted; or (ii) an attorney for the Government has recommended that no sentence of imprisonment be imposed on the person; and (B) the judicial officer finds by clear and convincing evidence that the person is not likely to flee or pose a danger to any other person or the community. 18

to prove, by clear and convincing evidence, that he is not likely to flee or pose a danger to the safety of any other person or the community if released.  18 U.S.C. § 3143(a)(2).

Although some courts have held that there is a limited relief from the general rule of mandatory detention, under 18 U.S.C. § 3145(c), a defendant subject to detention pursuant to Section 3143(a)(2) "may be ordered released, under appropriate conditions," if two requirements are met. *First*, the district court must find "by clear and convincing evidence that the person is not likely to flee or pose a danger to the safety of any other person or the community if released" (whether subject to bail conditions or otherwise). 18 U.S.C. § 3143(a)(1); *see id.* § 3145(c). *Second*, it must be "clearly shown that there are exceptional reasons why such person's detention would not be appropriate." *Id*.; § 3145(c); *see also United States v. Lea*, 360 F.3d 401, 403–04 (2d Cir. 2004) (internal citations omitted) ("The test under § 3145(c) is necessarily a flexible one, and district courts have wide latitude to determine whether a particular set of circumstances qualifies as 'exceptional.' [However,] [t]here is nothing 'exceptional' about going to school, being employed, or being a first-time offender, either separately or in combination.").

Here, Defendant has pleaded guilty to Disaster Relief Fraud in violation of 18 U.S.C. § 1040 and Wire Fraud in violation of 18 U.S.C. § 1343. There is not a substantial likelihood that a motion for acquittal or new trial will be granted, and the Government has not recommended that no sentence of imprisonment be imposed upon the Defendant. *See* ECF No. 36. To this end, having considered: (i) the Government's Motion to Remand, (ii) the Government's Supplemental Letter, (iii) the two Pretrial Services Memoranda Requesting for Modification of Bail Conditions, (iv) Defense Counsel's Response to Pretrial Services' July 11 Memorandum, and (v) the arguments of

---

U.S.C. § 3143(a)(2) (emphasis added); *see also id.* § 3142(f)(1)(A)-(C) (defining the offenses to which Section 3143(a)(2) applies).

both the Government and Defense Counsel at the hearing, the Court finds that Defendant poses an economic threat and a danger to the community if released, and, that no combination of conditions imposed will ensure that he will not pose such a danger,[9] and, therefore, Defendant is additionally subject to detention under 18 U.S.C. § 3143(a). *See e.g.*, *LaFontaine*, 210 F.3d at 129-35 (finding defendant convicted of white-collar crimes presented a danger to the community after she had shredded documents, attempted to contact witnesses, and intimidated a former colleague while out on bail)*; United States v. Kimoto*, No. 07-CR-30089-MJR, 2008 WL 4516315, at *4 (S.D. Ill. Oct. 6, 2008) (detaining defendant and holding he was an "economic danger" to the community, because he engaged in fraudulent telemarketing activities, which "clearly demonstrate[d] a propensity to endanger the economic interests of others within the community, particularly those least able to afford such victimization" and where "[m]onitoring [his] internet and telephone access as well as undertaking other measures to prevent him from devising and engaging in schemes that would endanger the community would place an unsustainable burden on pretrial services."); *United States v. Wang*, No. 23 CR. 118-3 (AT), 2023 WL 4551637, at *3 (S.D.N.Y. July 14, 2023)

---

[9] The Court notes that the only "exceptional circumstance" warranting release presented by Defendant at the hearing were statements by his stand-by counsel that the conditions of the Metropolitan Detention Center ("MDC") in Brooklyn in and of themselves create exceptional circumstances. *See* ECF No. 47. The undersigned acknowledges that the Southern District of New York recently held MDC's conditions alone – inordinate amount of time that federal inmates spent on "lockdown," *i.e.,* locked in cells, prohibited from leaving for visits, calls, showers, classes, or exercise – constitute an "exceptional reason" justifying continued release of a defendant subject to mandatory detention following a guilty plea under Bail Reform Act, *see United States v. Chavez*, No. 22-CR-303 (JMF), 2024 WL 50233, at *1 (S.D.N.Y. Jan. 4, 2024). However, as previously discussed, such release is *only* warranted where the defendant is "not likely to flee or pose a danger to the safety or any other person or the community if he is left on bail subject to the release conditions to which he has been subject to date." *Id.* at *5 (releasing defendant due to the conditions at MDC where it was also undisputed that he was "not likely . . . to pose a danger to the community, as he was "a seventy-year-old man, with no prior criminal record and serious health problems, and [had] complied in every respect with the conditions of his release in this case to date."). To this end, because the Court has not found by clear and convincing evidence that Defendant is not likely to pose a danger to the safety of any other person or the community if released (whether subject to bail conditions or otherwise), *see supra*, Section II.A, it need not reach the issue of whether there are exceptional circumstances warranting his release here.

(detaining defendant where "the Government has shown by a preponderance of the evidence that [defendant] ha[d] access to undisclosed assets, including bank accounts associated with the entities involved in the charged fraud scheme" and where defendant's "past obstructive conduct in th[e] case demonstrate[d] that the Court does not have reasonable assurance that [defendant] w[ould] abide by any conditions of pretrial release.").

### III.     <u>CONCLUSION</u>

For the reasons stated herein, the Government's Motion to Remand (ECF No. 36) is hereby **GRANTED**, the Bond is revoked and Defendant is ordered detained pending sentencing. Pursuant to Fed. R. Crim. P. 46(f)(1), the Court declares Defendant's $250,000.00 bail forfeited.

Dated: Central Islip, New York
      July 24, 2024

S O   O R D E R E D:

/S/ *James M. Wicks*

JAMES M. WICKS
United States Magistrate Judge

20

For the reasons stated in the Memorandum Order issued this same date and attached and incorporated by reference herein, the Court finds that pursuant to 18 U.S.C. § 3143(a), detention is warranted under the circumstances.

**Directions Regarding Detention**

The defendant is remanded to the custody of the Attorney General or to the Attorney General's designated representative for confinement in a corrections facility separate, to the extent practicable, from persons awaiting or serving sentences or being held in custody pending appeal.  The defendant must be afforded a reasonable opportunity for private consultation with defense counsel.  On order of a court of the United States or on request of an attorney for the Government, the person in charge of the corrections facility must deliver the defendant to a United States Marshal for the purpose of an appearance in connection with a court proceeding.

Dated: July 24, 2024

**S O   O R D E R E D:**

/S/ *James M. Wicks*

JAMES M. WICKS
United States Magistrate Judge